UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-21704-Civ-COOKE/TORRES

KEN CAMERON and MICHELLE
CAMERON,

    Petitioners,

vs.

SCOTTSDALE INSURANCE COMPANY,

    Respondent.

_____/

**ORDER GRANTING SUMMARY JUDGMENT**

    The parties in this action dispute certain insurance policy language related to water damage coverage. Petitioners Ken and Michelle Cameron ("Petitioners") seek a judicial declaration of their rights under an insurance policy issued by Respondent Scottsdale Insurance Company ("Respondent").

    Before me is Respondent's Motion for Summary Judgment ("Motion") (ECF No. 13). I have reviewed the parties' filings, the record, and the relevant legal authorities. For the reasons set out below, I grant Respondent's Motion.

**I. BACKGROUND**

    A pipe collapsed in the internal plumbing system of Petitioners' apartment complex that caused water and property damage to the premises. ECF No. 1-2 at 3. The pipe was identified after a tenant reported an overflow of water from a drain in their kitchen sink. ECF No. 14-1 at 3. Petitioners' plumber described the damage as an "acute pipe failure" arising from an "abrupt cessation of normal operation" of the collapsed pipe. ECF No. 15-1 at 3. The plumber ultimately had to break the concrete floor slab in an apartment unit to access and repair the pipe. ECF Nos. 14-1 at 3, 15-1 at 3. Respondent and Petitioners' Trust had previously entered into a commercial property insurance contract ("Policy") that was in effect at the time of the incident. ECF No. 1-2 at 3. Respondent investigated the damaged property and refused to cover the loss based on the Policy's exclusions. *Id.* at 3 – 4. Petitioners believe the exclusions, if applicable, do not apply to water overflows originating from the internal plumbing system.

    Several Policy provisions are relevant here. For one, the Policy notes that certain

1

property is never covered, including "Underground pipes, flues or drains." ECF No. 7-1 at 55. Further, the Policy generally excludes coverage for damages arising from "Wear and tear . . . [or] Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself." *Id.* at 91. But this exclusion excepts damages resulting from a "specified cause of loss," *id.*, like "water damage." *Id.* at 98. The Policy defines "water damage" to include "[a]ccidental discharge or leakage of water or stream as the direct result of the breaking apart or cracking of a plumbing . . . or other system . . . that is located on the described premises and contains water or steam." *Id.* At the same time, a Water Exclusion Endorsement ("WEE") prevents payment for water damage resulting from, among other things, "Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump, or related equipment." *Id.* at 99.

## II. Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The function of the trial court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 – 50 (1986). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

"The moving party bears the initial burden to show the district court . . . that there is no genuine issue of material fact that should be decided at trial. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). If the moving party meets this burden, then the non-moving party must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Id.* Any inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

## III. Discussion

Florida law mandates that insurance contracts be construed under their plain meaning, without need for extrinsic evidence. *See Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005). "If the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and another limiting coverage, the insurance policy is considered ambiguous," and the ambiguity is "construed against the drafter and in favor of the insured." *Auto–Owners Ins. Co. v. Anderson*, 756 So.2d 29, 34 (Fla. 2000). But "[a] provision is not ambiguous simply because it is complex or requires analysis." *Garcia v. Fed. Ins. Co.*, 969

2

So. 2d 288, 291 (Fla. 2007). In fact, "if a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision." *Id.* (internal quotation marks omitted).

Parties dispute the scope of the WEE, which excludes from coverage "Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump, or related equipment." ECF No. 7-1 at 99. Respondent believes the backup of the Petitioner's plumbing line falls under the WEE's clear and unambiguous terms. Petitioners retort the WEE, when read in context of the full Policy, applies to water backups or overflows deriving outside their property's premises.

Respondent has the better of the argument here. No definition of "drain" appears in the Policy, but the term ordinarily refers to a "conduit for draining liquid, as a ditch or a pipe." *Drain,* BLACK'S LAW DICTIONARY (10th ed. 2014). Though the parties dispute whether the collapsed pipe was a "sewer" and refer to the pipe by different names—a "sewer line" for Respondent, a "sanitary line" for Petitioners—it was, at the very least, a "drain." Parties do not seriously dispute this point or that there was a back up and overflow from the pipe.[1] More importantly, the WEE does not differentiate between drains found inside or outside the Petitioners' property line or their plumbing system. By its very terms, then, the WEE bars payment for the water damage and other repairs stemming from the Petitioners' collapsed and backed up pipe.

The result of this case may have differed had another policy provision specifically covered the overflow of water from the property's internal plumbing system. *See, e.g.*, *Cheetham v. S. Oak Ins. Co.*, 114 So. 3d 257, 260, 263 (Fla. Dist. Ct. App. 2013) (concluding a policy exclusion for water damage from sewers and drains did not effect internal plumbing system leaks since policy specifically covered overflow of water "from within a plumbing [ ] system"); *see also Old Dominion Ins. Co. v. Elysee, Inc.*, 601 So. 2d 1243, 1245 (Fla. Dist. Ct. App. 1992) (citing cases with similar provisions). But no other Policy provision here, including the water damage exception, limits the sewer and drain language found in the WEE. *See* ECF No. 7-1 at 98 (stating that "water damage does not include loss or damage otherwise excluded under the terms of the [WEE]"). To be sure, a state court in *Old Dominion Insurance Company v. Elysee,*

---

[1] In their response filing, Petitioners briefly dispute whether the water in question came "from" a drain. *See* ECF No. 15 at 14 – 15. But this argument is moot because I find the pipe in question was a "drain," and that the WEE encompasses back ups and overflows from Petitioners' internal plumbing system.

*Inc.*, 601 So. 2d 1243 (Fla. Dist. Ct. App. 1992), declared "a sewer or drain begins at [a party's] property line," despite no policy provision in that case that explicitly covered overflows from the property's internal plumbing system. *See Old Dominion*, 601 So. 2d 1243, 1245 (Fla. Dist. Ct. App. 1992). But I adopt the reasoning from the federal district court in *Killian Palms Country Club and Sports Complex, LLC v. Scottsdale Insurance Company*, No. 11-CIV-21978-UU, ECF No. 49 (S.D. Fla. Feb. 29, 2012), that scrutinized *Old Dominion*'s findings and involved a nearly identical insurance policy from Respondent. *See Killian Palms*, No. 11-CIV-21978-UU, ECF No. 49 at 9 – 11. As the district court underscored, "courts may not rewrite [insurance] contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties." *Id.* at 11 (quoting *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005)) (alteration in original).

Because I find the WEE bars recovery for Petitioners in this case, it is unnecessary to analyze the other Policy provisions parties raise. The lack of coverage for underground pipe damage, *see* ECF No. 7-1 at 55, is inconsequential, since it does not cover any purported water damage Petitioners allege. The water damage exception, *id.* at 98, does not impinge on the WEE, as discussed above. And I need not analyze the deterioration exclusion, *id.* at 91, since the WEE undergirds my decision.[2]

### IV. CONCLUSION

For the reasons above, Respondent's Motion for Summary Judgment (ECF No. 13) is **GRANTED**. The Clerk shall **CLOSE** this case. I will issue a separate judgment pursuant to Federal Rule of Civil Procedure 58.

**DONE and ORDERED** in chambers at Miami, Florida, this 28th day of March 2017.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Edwin G. Torres, U.S. Magistrate Judge*
*Counsel of record*

---

[2] A discussion of standing is superfluous here. Any procedural defects with the Petitioners as the named parties, as opposed to the Petitioners in their roles as trustees of the trust named in the insurance policy, are curable through interlineation. But because I have found in favor of Respondent on its Motion, this potential corrective measure is unnecessary.